OPINION
Appellant, Cassandra Sears, appeals the June 5, 2001 judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, approving and adopting the May 3, 1999 decision of the magistrate, and overruling appellant's objections to the magistrate's decision. For the reasons that follow, we affirm.
This case involves the permanent court commitment ("PCC") of Sherell Sears, born April 10, 1987, and Rickia Sears, born August 14, 1991. Appellant is the mother of both children. Appellant also has two sons, Antonio Sears and Dewayne Sears, who are not the subject of this appeal.[1]
Appellant has a history of frequent incarcerations.[2] During the time appellant was incarcerated from July 16, 1996 through October 1, 1996, appellant left Sherell and Rickia in the care of her friend, Angie Battles. Appellant testified that she executed a power of attorney giving Battles the authority to care for the two girls. (Oct. 10, 2000 Depo., at 24-25.) During the time she was caring for Sherell and Rickia, Battles contacted Franklin County Children Services ("FCCS") for monetary support in connection with caring for both of the girls. FCCS became involved in August 1996, and temporarily committed both girls to the custody of FCCS.
FCCS developed a case plan to help reunify appellant with Sherell and Rickia. After appellant showed little progress with completing the case plan, FCCS filed a motion for permanent commitment of Sherell and Rickia on September 11, 1998. On April 12, 1999, a magistrate conducted a hearing, in which Tana Mooney, a caseworker with FCCS, and Keith England, an adult probation officer with Franklin County, testified.[3]
At the close of the hearing, Natalie Fletcher, Guardian ad litem on behalf of both minor children, gave her recommendations. Fletcher stated:
 * * * I think we have reason for a PCC on the basis that mother has missed many visitations. She even missed the — the appointments with the probation officer. She has clearly shown us in two courts, not just Juvenile Court, that's [sic] she's unable to comply with the orders of the Court and the case plan they set up with — for her. But — un — unable to comply or honor the orders of the Common Pleas Court. And when she doesn't get what she wants, she writes hostile letters to everyone. And I can't say that the communications that she did have were loving examples to the children. I have visited with the children. They've all given up on her. It's been too much water under the bridge and it's time to cut bait and get a real life. We've shown that she's had unstable hou — housing. We've provided verification through two different sources, the caseworker and her probation officer. She's had a positive drug screen; she's failed to visit and basically, she just hasn't been around for her children. She does have a history of repeated incarcerations. I believe there's plenty of grounds for this PCC to go forward. * * * [April 12, 1999 Tr. 101-102.]
On May 3, 1999, the magistrate terminated the temporary court commitment ("TCC") of Sherell and Rickia and granted the request on behalf of FCCS to commit both girls to the permanent court custody of FCCS for the purpose of adoption. The magistrate, in finding that permanent commitment to FCCS was in the best interest of the children, reasoned that:
 * * * [C]ontinuation in the child(ren)'s own home would be contrary to the child(ren)'s welfare and reasonable efforts have been made to prevent or eliminate the need for removal of said child(ren) from the child(ren)'s own home. * * * [P]lacement and caseworker services were provided by the agency to the family of the child(ren), but the removal of the child(ren) from home continues to be necessary because the circumstances giving rise to the original filing have not been sufficiently alleviated. * * * [May 3, 1999 magistrate's decision.]
On June 24, 1999, David A. Barth, counsel for appellant at the PCC hearing, filed a motion for leave to file objections to the May 3, 1999 magistrate's decision. On December 8, 1999, the trial court appointed Barbara Lucas to represent appellant. On December 21, 1999, before the trial court ruled on appellant's motion for leave to file objections, Attorney Lucas filed objections to the magistrate's decision, requesting that the trial court withhold on ruling on the objections until the transcripts of the April 12, 1999 PCC hearing were prepared and reviewed by appellant, and any additional supplemental objections were thereafter filed by appellant. On February 9, 2000, the trial court sustained appellant's motion for leave to file objections and allowed Attorney Lucas to pursue objections to the May 3, 1999 magistrate's decision and obtain a transcript of the April 12, 1999 PCC hearing.
On July 17, 2000, appellant filed a supplement to the objection to the magistrate's decision alleging that, when the trial court denied her request to be present at the hearing, she was not afforded another means to present her testimony. Appellant contends that she did not waive her presence by and through her counsel, and because she was not present at the hearing, her case was prejudiced. On August 22, 2000, an entry was filed with the trial court, whereby the parties agreed to depose appellant, and further agreed that the deposition would be considered additional evidence in ruling on appellant's objections. On September 1, 2000, the trial court found good cause was shown to depose appellant, and ordered a copy of the transcript be delivered to the court. On October 18, 2000, appellant was deposed at Attorney Lucas' office.[4]
On October 30, 2000, the transcript of the deposition was filed with the trial court. On November 16, 2000, the parties presented oral arguments to the trial court.
Shortly after appellant's deposition, Sharon Downing Hendrickson, Guardian ad litem, filed a final report with the trial court.[5] In her report to the trial court, Hendrickson recommended that it was in the best interest of the children "to be part of a family comprised of * * * parents who are stable, loving, and firm, who have the resources to make a legally secure home for them, and who can bring a sense of continuity to these children's lives." (Final report of the Guardian ad litem, dated November 16, 2001, at 7.) Hendrickson concluded that, while PCC with adoptive parents should proceed with regard to Rickia, reunification with Sherell and appellant is preferable to continued placement with FCCS, provided that appellant continued to demonstrate a commitment to improve her ability to be the mother that Sherell needs.
On June 5, 2001, the trial court, after reviewing the magistrate's decision, the transcripts, exhibits, pleadings of the parties, and the trial court's own record, determined that the magistrate did not err as a matter of fact or law in holding that the best interest of Sherell and Rickia would best be served by granting PCC to FCCS. As a result, the trial court overruled appellant's objections and sustained the magistrate's decision. It is from this decision that appellant appeals, raising the following assignments of error:
ASSIGNMENT OF ERROR [NO.] 1
 THE COURT ERRED IN PROHIBITING THE TRANSPORT OF CASSANDRA SEARS, MOTHER OF SHERELL SEARS AND RICKIA SEARS, TO THE APRIL 12, 1999 HEARING BEFORE MAGISTRATE SANCHEZ ON THE MOTION OF FRANKLIN COUNTY CHILDREN'S SERVICES FOR PERMANENT CUSTODY OF SHERELL SEARS AND RICKIA SEARS.
ASSIGNMENT OF ERROR NO. 2
 THE COURT ERRED IN RELYING ON A POST-HEARING DEPOSITION OF CASSANDRA SEARS IN LIEU OF RECONVENING THE HEARING SO AS TO ALLOW HER TO (A) CROSS-EXAMINE WITNESSES; (B) TO MAKE A PERSONAL APPEARANCE BEFORE THE MAGISTRATE AND/OR JUDGE AND (C) TO GIVE GUIDANCE TO HER COUNSEL AS IN A TRIAL.
ASSIGNMENT OF ERROR [NO.] 3
 THE COURT ERRED IN FAILING TO CONSIDER THE REPORT OF THE GUARDIAN AD LITEM OF RICKIA AND SHERELL SEARS, REPORTING FACTS BEARING ON THEIR EMOTIONAL SET, THEIR DESIRES, THEIR ATTACHMENTS, THEIR INTELLIGENCE, WHICH REPORT RECOMMENDED THAT CUSTODY OF SHERELL SEARS BE WITH HER MOTHER, CASSANDRA SEARS.
ASSIGNMENT OF ERROR NO. 4
 THE COURT FAILED TO TAKE INTO CONSIDERATION THE WISHES AND INTERESTS OF SHERELL SEARS FOR A PERMANENT LIVING ARRANGEMENT AND BONDING WITH HER MOTHER.
ASSIGNMENT OF ERROR NO. 5
 THE COURT ERRED BY DISREGARDING OTHER EVIDENCE FAVORABLE TO APPELLANT MOTHER.
ASSIGNMENT OF ERROR NO. 6
 THE COURT ERRED IN ORDERING AN AWRD OF PERMANENT CUSTODY WHERE THE MOTHER, CASSANDRA SEARS HAD COMPLETED PARENTING CLASSES; HAD MAINTAINED HER MATERNAL BOND WITH HER CHILDREN BY VISITATIONS AND LETTERS; WHERE, AFTER RELEASE FROM INCARCERATION SHE FOUND EMPLOYMENT AND ACTED RESPONSIBLY WITH REFERENCE TO HER CHILDREN.
In reviewing a trial court's decision to grant permanent custody, we have to be mindful that:
 * * * The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. [In re Awkal (1994), 95 Ohio App.3d 309, 316.]
Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; In the Matter of: Marshall (July 12, 1996), Geauga App. No. 95-G-1934, unreported.
In this case, appellant's first and second assignments of error are interrelated and will be addressed together. Appellant challenges the trial court's decision in contending that the trial court erred in prohibiting her from attending the April 12, 1999 PCC hearing, thus not affording her the opportunity to make a personal appearance to cross-examine witnesses, and to give guidance to her counsel during the trial. As such, appellant argues that her constitutional due process rights were violated.
When the state initiates a permanent custody proceeding, parents must be afforded the fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process Clause and Section 16, Article I, Ohio Constitution. In re Elliott (June 25, 1993), Lawrence App. No. 92 CA 34, unreported. Natural parents have a constitutionally protected right to be present at a permanent custody hearing. In re Vandale (June 30, 1993), Washington App. No. 92 CA 31, unreported. Although those same constitutionally protected rights extend to an incarcerated parent, those rights may not be absolute. Id. The standard to use to determine if an incarcerated parent should be present at a permanent custody hearing should be based on "the best interest of the child or children involved. It is almost always in the best interest of the child to have the parent attend and testify in person in a permanent custody hearing. In making a well[-]reasoned and informed decision, a trial court is best served by having available as much information as possible. All things being equal, the testimony from a parent would provide more information than not having the parent." In the Matter of Vandale (Aug. 12, 1992), Washington App. No. 92 CA 9, unreported.
In addition, the United States Supreme Court has set forth a balancing test to be used to determine a parent's due process rights. In Mathews v. Eldridge (1976), 424 U.S. 319, 334, the Supreme Court held that three factors must be considered: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." In order to determine if the trial court erred in denying appellant's oral request to be present at the PCC hearing, we will evaluate the three factors pronounced in Mathews.
We first consider the private interest affected by the PCC. We recognize that appellant's right to raise her children is an "essential" and "basic" civil right. In re Murray (1990), 52 Ohio St.3d 155. In addition, appellant's fundamental liberty interest in the care, custody, and management of Sherell and Rickia did not evaporate simply because she was incarcerated, was not a model parent, or lost temporary custody to FCCS. Santosky v. Kramer (1982), 455 U.S. 745, 753; In the Matter of: Runyon (Mar. 18, 1993), Highland App. No. 819, unreported.
We next address the second factor of Mathews. Any risk of erroneous deprivation of appellant's private interest in not attending the PCC hearing concerning her parental rights appears to have been fairly low. Appellant was incarcerated and there was no possibility of placing the children with her within any reasonable time. Furthermore, at the PCC hearing, appellant was represented by counsel. On the record, counsel for appellant indicated that appellant's appearance was waived for the hearing. (April 12, 1999 Tr. at 56.) Since counsel for appellant was present at the hearing and actually cross-examined witnesses, and did not object to appellant's absence, appellant's right to attend the PCC hearing was effectively waived. In the Matter of McCaman (Oct. 2, 1991), Summit App. No. 15012, unreported. Although appellant filed objections to the magistrate's decision objecting to the trial court's decision in denying her request to attend the hearing, she was unable to show prejudice from her absence, when the parties employed substitute procedural safeguards. After appellant filed an objection to the magistrate's decision, and with the agreement of the parties, the trial court, recognizing the importance of the rights at stake, allowed appellant to be deposed, and further agreed to have the deposition considered in its ruling.
We finally consider the third factor set forth in Mathews; the state's interest in parental termination proceedings. In examining this third factor, Santosky, at 766, noted that two state interests are at stake in a permanent custody proceeding. One interest is that the state has a parens patriae interest in preserving and promoting the welfare of the child. Secondly, the state has a fiscal and administrative interest in reducing the cost and burden of such proceedings. In a permanent custody proceeding, the state's parens patriae interest is served by procedures that "promote an accurate determination of whether the natural parents can and will provide a normal home." Id. at 767. Here, allowing appellant to present her testimony by way of deposition served FCCS's goal and the best interest of the children. Furthermore, the deposition did not pose any undue fiscal or administrative burden upon the state. Appellant's due process rights were met when she was able to present her testimony by deposition. As such, the trial court did not err in overruling appellant's oral motion to be present at the PCC hearing. Appellant's first and second assignments of error are not well-taken and are overruled.
Appellant's third and fourth assignments of error are also interrelated and will be discussed together. Appellant argues that the trial court's June 5, 2001 judgment entry failed to take into consideration the best interest of Sherell and Rickia because the trial court failed to consider the Guardian ad litem report, filed November 16, 2000. Appellant contends that the trial court's failure to consider the report was a direct violation of R.C. 2151.414(C), which states:
 (C) In making the determinations required by this section or division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child. A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code but shall not be submitted under oath.
After careful review of the record, we find that the trial court did not err in failing to consider the written recommendations of Guardian ad litem Hendrickson. Hendrickson's report was not before the trial court to consider as additional evidence in its determination of permanent custody.[6] Properly before the trial court was the transcript of the April 12, 1999 hearing, which included the recommendations of Guardian ad litem Fletcher. Hendrickson's report was not filed prior to or at the time of the April 12, 1999 hearing. Hendrickson was appointed as Guardian ad litem on December 8, 1999; subsequent to the PCC hearing, but prior to appellant's deposition. After appellant's deposition, Hendrickson filed her final report with the trial court. While Hendrickson's report may have demonstrated the wishes of Sherell and Rickia, the report was not evidence which the court was statutorily required to consider because it was submitted after the date of the hearing and in the absence of any order from the court to submit a second report. Therefore, the trial court considered the evidence properly before it in determining that no evidence was presented as to the wishes of Sherell and Rickia. (June 5, 2001 judgment entry at 10.) As such, appellant's third and fourth assignments of error are not well-taken and are overruled.
Appellant's fifth and sixth assignments of error are also interrelated and, as such, we will address them together. Appellant contends that the trial court erred in finding that appellant showed a lack of commitment to her children when appellant presented evidence to the contrary. Specifically, appellant argues that the trial court ignored the fact that appellant completed parenting classes, maintained a maternal bond with her children, found employment after release from prison, and acted responsibly with regards to her children.
In determining a motion for permanent custody, the trial court must adhere to and follow the guidelines set forth in R.C. 2151.414. Pursuant to R.C. 2151.414(E), the trial court must consider all relevant evidence when determining permanent custody placement of a child. Here, the trial court followed the two-prong test set forth in In re William S. (1996),75 Ohio St.3d 95, 99. First, the trial court had to determine, by clear and convincing evidence, that one or more of the sixteen factors listed in R.C. 2151.414(E) exist. If one or more of those factors exist, then it is mandatory for the trial court to find that the child cannot be placed with either parent within a reasonable time period or should not be placed with either parent. R.C. 2151.414(E). Here, the trial court determined that four of the sixteen factors enumerated in R.C. 2151.414(E) existed.
In the present case, the trial court, in following the first prong of William S. determined that both Sherell and Rickia could not be placed with appellant within a reasonable time because appellant continuously and repeatedly failed to remedy the conditions that caused FCCS to become involved with the case. R.C. 2151.414(E)(1). Specifically, the trial court found that:
 the children's basic needs are not being met by appellant because of her repeated incarceration;
 appellant still needs to work on her learned parenting skills;
 appellant had not completed any anger management classes;
 appellant displays aggressive behavior towards those involved in the case;
 appellant was required to submit to regular urine screen, but refused to do so;
 although appellant submitted to a urine screen as part of her probation, the test came back positive for marijuana; and
appellant has not obtained housing of her own.
The trial court further determined that appellant demonstrated a lack of commitment toward the children by failing to attend scheduled visits, or arriving twenty to thirty minutes late. R.C. 2151.414(E)(4). Additionally, the trial court determined that, pursuant to R.C.2151.414(E)(12), both Sherell and Rickia could not be placed with appellant because, even after the PCC hearing, appellant still had to serve at least eighteen months of her sentence and would, therefore, be unable to care for her children during that time. Finally, the trial court determined that appellant's frequent incarcerations prevented her from providing care for Sherell and Rickia. R.C. 2151.414(E)(13). As such, the trial court determined that Sherell and Rickia could not be placed with appellant within a reasonable time. We find that the record contains competent, credible evidence supporting the trial court's determination that appellant failed to remedy the conditions that caused FCCS initial involvement and, as such, Sherell and Rickia cannot or should not be placed with appellant within a reasonable time.
The second prong test of William S., at 99, required the trial court to determine if permanent custody is in the best interest of the child, pursuant to R.C. 2151.414(D). If permanent commitment is in the best interest of the child, the trial court may terminate parental rights. Id. In determining the best interest of Sherell and Rickia, the trial court considered the following factors:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. [June 5, 2001 judgment entry at 9.]
The trial court gave each of these factors considerable evaluation and determined the following with regards to the best interest of Sherell and Rickia:
Interaction and Interrelationship
 There exists no mother-daughter relationship or bond between appellant and her children, because the children have never really lived with appellant.
 Sherell and Rickia do not ask to see each other and they do not get along with one another.
The Wishes of the Children
 No evidence was presented at the time of the hearing as to the wishes of Sherell and Rickia, from the children themselves or through the Guardian ad litem.
Custodial History
 Sherell has lived with appellant's mother since her birth and has never lived with appellant.
 Rickia lived with appellant for a period of time prior to appellant's July 1996 incarceration.
 After appellant was incarcerated, the children lived with appellant's aunt and then they lived with appellant's friend, Battles.
 Since FCCS became involved, Sherell has been in four foster homes, and in a thirty-day residential home through Hannah Neil CPU, and Rickia has been in two foster homes.
Legal Secure Placement
 Legal secure placement can only be achieved by granting permanent custody to FCCS. Sherell and Rickia's best interest would be served by being placed in a stable home.
After carefully reviewing the record, we determine that the trial court adequately explained and considered the evidence before it, and adhered to the guidelines pronounced in R.C. 2151.414 in granting permanent custody to FCCS. There exists competent and credible evidence supporting the trial court's determination that it was in Sherell and Rickia's best interest to grant permanent custody to FCCS. As such, the trial court did not err in sustaining the magistrate's decision and overruling appellant's objections. Accordingly, appellant's fifth and sixth assignments of error are not well-taken and are overruled.
For the foregoing reasons, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
TYACK, P.J., and BRYANT, J., concur.
[1] The legal custody of Antonio and Dewayne Sears was uncontested by appellant. On May 3, 1999, the trial court terminated the temporary court commitment ("TCC") of Antonio and Dewayne to the paternal grandmother of Antonio, Cleo Curtis. The trial court also terminated the court ordered protective supervision and awarded legal custody of both boys to Curtis.
[2] Evidence was presented at the April 12, 1999 PCC hearing to demonstrate that appellant was incarcerated from March 15, 1991 through March 18, 1991; from December 9, 1993 through December 10, 1993; from May 1, 1995 through May 10, 1995; from October 27, 1995 through November 2, 1995; from July 16, 1996 through October 1, 1996; from December 9, 1997 through December 24, 1997; from January 14, 1998 through January 15, 1998; and from April 9, 1998 through May 1, 1998. (April 12, 1999 Tr. 84-85.)
[3] At the time of the April 12, 1999 hearing, appellant's probation had been revoked and she was incarcerated. On the morning of the hearing, counsel for appellant made an oral motion to have his client transported from the Marysville, Ohio Reformatory for Women to attend the hearing. The trial court denied counsel's oral request.
[4] Appellant was released from prison in October 2000.
[5] Hendrickson was appointed as Guardian ad litem on December 2, 1999. Careful review of the record does not indicate what happened to Guardian ad litem Fletcher and why Guardian ad litem Hendrickson was appointed. At the October 18, 2000 deposition, Hendrickson was present and cross-examined appellant.
[6] It was not clear in the record that any request was made to the trial court, by either party, to have Hendrickson's report considered as additional evidence in the trial court's determination of permanent custody. Furthermore, it does not appear that the trial court ordered such a report to be filed before it rendered its decision.